# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| FLAVORSEAL, LLC. <br> 35179 Avon Commerce Parkway <br> Avon, OH 44011 <br><br> Plaintiff, <br><br> vs. <br><br> TRANSFORM PACK INC., <br> 520 Edinburgh Drive <br> Moncton, New Brunswick <br> E1E 4C6, Canada <br><br> Defendant. | CASE NO. <br><br> JUDGE <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT OF TERMINATION OF ROYALTIES, PATENT NON-INFRINGEMENT AND PATENT INVALIDITY** <br><br> (Jury Demand) |

Plaintiff Flavorseal, LLC ("Flavorseal"), by and through its undersigned counsel, hereby files this Complaint against Defendant Transform Pack Inc. ("Transform Pack") and avers as follows:

I.      NATURE OF THE ACTION

1. This is an action based on the interpretation and application of the Patent Laws of the United States, 35 U.S.C. § 1 et *seq*.

2. Flavorseal seeks a declaratory judgment that U.S. Patent No. 6,223,773 ("the '773 Patent"), which it had licensed under a July 2009 Production and License Agreement ("the Agreement") and which was modified under four subsequent Addenda (collectively "the Addenda"), has expired and thus consequently under the Supreme Court's recent decision in *Kimble v. Marvel Entertainment, LLC*, 135 S. Ct. 2401 (2015), Flavorseal owes no further royalties for this expired patent. A copy of Supreme Court's slip opinion in *Kimble* is attached as Exhibit A. A copy of the '773 Patent is attached as Exhibit B.

3. Flavorseal also seeks a declaratory judgment of non-infringement and/or invalidity of United States Patent Nos. 8,590,479 ("the '479 Patent") and 9,034,406 ("the '406 Patent"). Copies of the '479 and '406 Patents are attached as Exhibits C and D, respectively.

4. Counts I and II of this action arise under the Patent Laws of the United States, Title 35, United States Code. This Court has jurisdiction over Counts I and II under 28 U.S.C. § 1338(a).

II.       THE PARTIES

5.       Plaintiff Flavorseal is a corporation organized and operating under the laws of the State of Ohio, having a principal place of business at 35179 Avon Commerce Parkway, Avon, Ohio 44011.

6.       Upon information and belief, Defendant Transform Pack is a corporation organized and existing under the laws of the province of New Brunswick, Canada, having a principal place of business at 520 Edinburgh Drive, Moncton, New Brunswick E1E 4C6, Canada.

7.       Upon information and belief, Transform Pack has regularly conducted business in Ohio, including selling equipment, selling bonding agent for use with its equipment and negotiating agreements in Ohio.

8.       Upon information and belief, Transform Pack derives substantial revenue from the sale of its equipment and bonding agent as well as patent royalties in Ohio and in this judicial district.

III.       JURISDICTION AND VENUE

9.       This Court has subject matter jurisdiction over this controversy concerning declaratory judgment that the '773 Patent expired and consequently no patent royalties are due, and that the claims of the '479 Patent and '406 Patent are not infringed and/or invalid by virtue of 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

10.       Because there exists a diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11. This Court has personal jurisdiction over Transform Pack pursuant to the provisions of the Ohio Long Arm Statute, 28 O.R.C. § 2307.382, and the laws of the United States.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

IV. FACTUAL BACKGROUND

A. FLAVORSEAL'S AGREEMENT WITH TRANSFORM PACK REGARDING THE '773 PATENT

13. Flavorseal is an industry leader in the development and manufacture of food processing and packaging solutions that include packaging products used for curing or marinating fresh foods.

14. On or about July 20, 2009, Flavorseal (doing business at that time as CMS-Carrol Manufacturing and Sales), entered into a "Production and Licensing Agreement" (the "Agreement"), attached as Exhibit E, with Transform Pack.

15. Under the Agreement, Transform Pack granted to Flavorseal an "exclusive, irrevocable, royalty-bearing right and license" for the "Licensed Products" for the "Territory and in the Field of Use." (Ex. E § 2.2.) The Agreement included a royalty payment calculated as "the greater of ten percent (10%) of Net Sales or $30,000." (§ 8.1(c).)

16. The Agreement defined the term "Net Sales" as "the total gross receipts for sales of Licensed Products by or on behalf of" Flavorseal. (§ 1.8.) The Agreement also defined the term "Licensed Products" as:

> 1.7.1 Any product that is covered in whole or in part *by the Licensed Patents, Know-how, or Improvements*;
>
> 1.7.2 Any product that is manufactured using a process that is covered in whole or in part *by the Licensed Patents, Know-how, or Improvements*;

    1.7.3    Any product that is used according to a method or use that is covered in whole or in part *by the Licensed Patents, Know-how, or Improvements*;

    1.7.4    Any product that incorporates or is developed with the use of Know-how;

    1.7.5    Any product made by CMS [Flavorseal] *using the Purchased Equipment*

(§ 1.7 (emphasis added).)

17.    The Agreement defined "Licensed Patents" as:

all U.S. and foreign patents and patent applications set forth in Schedule C, and any additional patents and/or applications, to be added from time to time, together with and al issuing thereon, including continuations, continuations in part, divisionals, reexaminations, extensions, reissue applications, and any United States or foreign patents granted upon such applications. Any patent applications and/or issued patents arising from any Improvements shall be added to Schedule C and be deemed Licensed Patents for the purposes of this Agreement.

(§ 1.6.) The only U.S. patent listed in Schedule C of the agreement was the '773 Patent. (*Id.* at Sch. C.)

18.    The Agreement also set forth that Flavorseal agreed to pay a "production meter charge of $0.50 USD per meter of the application matrix or medium used in the patented process" (§ 8.1(a)) and that "all adhesive dry matter shall be purchased from Transform Pack" (§ 8.1(b)). This "adhesive dry matter" is also called "bonding agent."

19.    The Agreement further included that Transform Pack would sell several pieces of "Purchased Equipment" to Flavorseal "[i]n order to carry out the unique processes" covered by the '773 Patent. (§ 4.1.) The term Purchased Equipment was defined as "all of the equipment outlined in Schedule A." (*Id.*)

20.    The parties also agreed that "for any disputes regarding United States patent rights, such disputes shall be heard in any United States federal court where the Parties are subject to personal jurisdiction." (§ 22.1.)

21. On or about May 9, 2011, the parties executed an Addendum to the Agreement, attached as Exhibit F. The Addendum eliminated the meterage charge and temporarily modified royalty rates.

22. On or about July 23, 2012, the parties executed a Second Addendum to the Agreement, attached as Exhibit G. Through the Second Addendum, Transform Pack and Flavorseal agreed to permanently modified royalty rates.

23. On or about February 24, 2014, the parties executed a Third Addendum to the Agreement, attached as Exhibit H. The Third Addendum modified determination of royalties and the dispute resolution process.

24. On or about September 14, 2015, the parties executed a Fourth Addendum to the Agreement, attached as Exhibit I. By the Fourth Addendum, the parties agreed to modify the dispute resolution process. Additionally, the parties modified the license to expressly set forth that royalties were only owed under the Licensed Patents and not for "Know-How" or "Improvements":

> Transform Pack grants to Flavorseal and Flavorseal accepts, subject to the terms and conditions of this Fourth Addendum, an exclusive, irrevocable license under the Licensed Patents, Know-how and any Improvements to make, sell, offer to sell, use, import and otherwise fully practice the Licensed Patents, Know-how and Improvements throughout the Territory and a non-exclusive, irrevocable license under the Licensed Patents, Know-how and any Improvements to make, sell, offer to sell, use, import and otherwise fully practice the Licensed Patents, Know-how and Improvements outside the Territory, with the exception that no rights shall be granted in the Dominion of Canada and the United Kingdom. ***Pursuant to the Third Addendum, the Parties agree that for all net sales <u>made under the Licensed Patents</u>, Flavorseal shall pay to Transform Pack royalties as set forth in Table 1*** of the Second Addendum to the Production and Licensing Agreement, dated July 23, 2012.

(Ex. I § 1.1 (emphasis added).)

25. In the Fourth Addendum the parties also agreed that the terms of original Agreement remained valid "unless expressly modified by the Fourth Addendum." (§ 3.2.) Thus, the Fourth Addendum modified the scope of the license and resulting royalty right. The Fourth Addendum is the controlling license and royalty provision.

26. The parties also acknowledged that "each party had the opportunity to consult with counsel before entering into the Fourth Addendum." (§ 3.3.)

27. On November 8, 2015, the '773 Patent expired. Patents are afforded a term of "20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application . . . the date on which the earliest such application was filed." 35 U.S.C. § 154(a)(2). The '773 Patent is a continuation-in-part from U.S. Patent Application No. 08/554,772, which was filed on Nov. 7, 1995. (Ex. B field (63).) This November 7, 1995 date is the date from which the term of the '773 Patent is calculated. Thus, the '773 Patent's term ended 20 years after November 7, 1995. The '773 Patent was expired as of November 8, 2015.

28. Flavorseal has paid all royalties owed under the Agreement and its Addenda from the start of Agreement on July 20, 2009, to the expiration date of the '773 Patent on November 7, 2015.

B. **TRANSFORM PACK DEMANDS ROYALTIES FOR ITS EXPIRED PATENT AND ASSERTS INFRINGEMENT OF ADDITIONAL PATENTS**

29. On December 9, 2015, counsel for Flavoerseal sent a letter to counsel for Transform Pack, attached as Exhibit J, informing Transform Pack that in accordance with *Kimble v. Marvel Entertainment, LLC*, 135 S. Ct. 2401 (2015), Flavorseal's royalty obligations as defined under the Fourth Addendum had expired with '773 Patent.

30. On December 11, 2015, counsel for Transform Pack replied, attached as Exhibit K, disputing that the '773 Patent had expired: "You state that my client's patent has expired; however my client's patent rights have not expired as shown by the attached Statement from the United States Patent Office." (Ex. K, at 1.)

31. The "Statement" was merely a receipt for paid maintence fees. (*Id.* at 3.) Also attached was a letter from Transform Pack's patent counsel, attached here as Exhibit L, sent when the '773 Patent issued, expressly informing Transform Pack that "the patent will expire on November 7, 2015." (Ex. L, at 2.)

32. In its December 11, 2015 letter, counsel for Transform Pack also asserted that "payments are to be for sales of the Licensed Products which are defined in section 1.7 of the July 20, 2009 agreement" rather than as defined under the Fourth Addendum. (Ex. K, at 1.) The letter further demanded that "Transform Pack is requiring Flavorseal to continue payments and failure to do so is an immediate, incurable and irreparable material breach of the agreement" and that "the next step is arbitration here in New Brunswick." (*Id.* at 2.)

33. On December 15, 2015, counsel for Flavorseal sent another letter, attached as Exhibit M, to counsel for Transform Pack, explaining how to "calculate when the '773 Patent expired." (Ex. M, at 1.)

34. The letter also explained that original royalty calculation based on "Licensed **Products**" was "no longer in force because in the Third and Fourth Addenda the parties agreed royalties would only be due for net sales made under 'Licensed **Patents**.'" (*Id.* at 2 (emphasis added).) In other words, "royalties are only tied to sales made under the Licensed Patents, which only means the unquestionably expired '773 Patent." (*Id.*) Accordingly, if no royalty is due, then "there is no breach." (*Id.*)

35. Finally, the letter informed Transform Pack that "determining if royalties are owed for net sales made in the United States under an expired U.S. patent is a question of 'United States patent rights' so the controlling case is *Kimble v. Marvel*—not the laws of the Province of New Brunswick." (*Id.*)

36. In a December 17, 2015 reply, attached as Exhibit N, counsel for Transform Pack asserted for the first time that the Agreement "clearly refers to all Transform Pack patents, . . . namely, US Numbers 8,590,479 and 9,034,406." (Ex. N, at 1.) The reply stated that these two patents covered "the production machines currently in use at Flavorseal and clearly within the definition of Licensed Patents." (*Id.*)

37. Flavorseal replied on December 23, 2015, attached as Exhibit O, delineating that the '479 Patent and '406 Patent are not "Licensed Patents" and that Transform Pack "needs to come to grips with the fact that this patent expired and any obligations to pay further royalties expired with it." (Ex. O, at 1.)

38. In a follow-up letter of January 7, 2016, attached as Exhibit P, counsel for Transform Pack again asserted that the Agreement included the '479 and '406 Patents and attached copies of each. The letter also expressly accused Flavorseal of being "in breach" of those two patents. (Ex. P, at 2.)

39. In its January 7, 2016 letter, Transform Pack also acknowledged that *Kimble v. Marvel* is applicable and controlling for the present dispute. (Ex. P, at 1-2.)

40. The '479 Patent was filed on July 25, 2011. (Ex. C.) The '479 Patent bears no relationship to the '773 Patent.

41. The independent claims of the '479 Patent require "air-and-free-moisture removing equipment." (*Id.* claims 1, 9.)

42. The '406 Patent was filed on September 25, 2013. (Ex. D.) The '406 Patent bears no relationship to the '773 Patent.

43. The independent claim of the '406 Patent requires "removing air and free moisture" (*Id.* claim 1.)

44. On January 22, 2016, counsel for Flavorseal sent a final letter, attached as Exhibit Q, requesting that Transform Pack provide a basis for its new accusation that Flavorseal was infringing the '429 and '406 Patents. Flavorseal received no reply.

45. On Febuary 1, 2016, Transform Pack instituted an arbitration proceeding against Flavorseal in New Brunswick, Canada in violation of the dispute resolution provisions of the Agreement whereby any dispute regarding U.S. patent rights be filed in a United States district court.

V. COUNT I: JUDGMENT THAT THE '773 PATENT EXPIRED AND CONSEQUENTLY NO FURTHER ROYALTIES ARE OWED UNDER THE AGREEMENT AND ITS ADDENDA

46. Flavorseal incorporates by reference herein the allegations of Paragraphs 1-45 of this Complaint.

47. Based on the conduct of Transform Pack, Flavorseal reasonably believed that its obligations to pay royalties under the Agreement expired when the '773 Patent expired.

48. In exchange for its consent to Flavorseal's use of the '773 Patent, Transform Pack received valuable consideration, including but not limited to, Flavorseal's promise to pay royalties based on sales of products covered under that patent while it was in force.

49. The Third and Fourth Addenda to the agreement expressly changed the royalties owed from being based on "Licensed **Products**" to being based solely on "Licensed **Patents**."

(Ex. H § 1.1; Ex. I § 1.1.)  Thus, the royalties were no longer based on "Licensed Products" as defined in § 1.7 of the original Agreement, but rather on "Licensed Patents" defined in § 1.6 of the original Agreement.

50. Under § 1.6, "Licensed Patents" includes only patents listed in or added to Schedule C of the Agreement. (Ex. E § 1.6.) The only U.S. patent ever in or added to Schedule C is the now-expired '773 Patent. (*Id.* at Sch. C.)

51. The Fourth Addenda removed any royalties owed for or derived from Know-How, Improvements, products made using Know-How or products made using Purchased Equipment not otherwise covered by the expired '773 Patent. These previous bases for royalties under § 1.7 of the agreement no longer apply after the Fourth Addenda.

52. Because royalties are tied solely to the '773 Patent pursuant Third and Fourth Addenda, and because the '773 Patent has expired, under *Kimble*, Transform Pack cannot continue to collect royalties under the Agreement and its Addenda.

53. Accordingly, Flavorseal's non-payment of any such demanded royalties is not a breach of the Agreement.

VI. COUNT II: DECLARATORY JUDGMENT OF PATENT INVALIDITY AND/OR NON-INFRINGEMENT

54. Flavorseal incorporates by reference herein the allegations of Paragraphs 1-53 of this Complaint.

55. Upon information and belief, Flavorseal has not directly or indirectly infringed the '429 or '406 Patents at least because its machines do not have "air-and-free-moisture removing equipment" for "removing air and free moisture."

56. Upon information and belief, even if Flavorseal's machines included all limitations of the '429 or '406 Patents' claims, Transform Pack's sale of those machines to Flavorseal exhausted any patent rights Transform Pack had in those machines and/or granted to Flavorseal an implied license to use those machines.

57. Thus, Flavoerseal's use of those machines is non-infringing.

58. Upon information and belief, even if Flavorseal's machines included all limitations of the '429 or '406 Patents' claims, those patents would be invalid under 35 U.S.C. § 102(b), because Transform Pack sold the machines to Flavorseal, in the U.S., more than one year prior to the filing dates of the patents.

59. Upon information and belief, the claims of the '429 or '406 Patents are further invalid for failure to comply with the requirements of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, or 112.

VII.    PRAYER FOR RELIEF

WHEREFORE, Flavorseal respectfully requests the following relief:

A. A judgment that Flavorseal is not in breach of the Agreement or any of the Addenda and that no further royalties are owed under the Agreement;

B. A judgment enjoining Transform Pack from collecting royalties after expiration of the '773 Patent;

C. A judgment that the claims of the '429 and '406 Patents are not infringed;

D. A judgment that the claims of the '429 and '406 Patents are invalid;

E.  A judgment enjoining Transform Pack from asserting the '429 or '406 Patents against Flavorseal, its representatives, agents, customers, and contractors, present and prospective;

F.  A judgment that this case is exceptional under 35 U.S.C. § 285 and an award of Flavoerseal's costs, expenses and reasonable attorney's fees; and

G.  Such other and further relief as the Court deems just and equitable.

VIII.    DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. Rule 38(b), Flavorseal respectfully demands a trial by jury of all issues triable as of right to a jury.

Dated: February 2, 2016

Respectfully submitted,

 /s/Todd R. Tucker
Todd R. Tucker (0065617)
ttucker@calfee.com
Joshua Friedman (0091049)
jfriedman@calfee.com
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 E. 6th Street
Cleveland, Ohio  44114
(216) 622-8200 (Telephone)
(216-241-0816 (Facsimile)

Attorneys for Plaintiff
Flavorseal, LLC